IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Summer M. Smith,

     Plaintiff,

    v.                                    Case No. 2:13-cv-582

Carolyn W. Colvin,
Acting Commissioner of
Social Security,

     Defendant.

ORDER

Plaintiff Summer M. Smith brings this action under 42 U.S.C. §§405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits and supplemental security income. The ALJ reviewed the medical evidence in the record, and held a video hearing, at which plaintiff and a vocational expert testified. In a decision dated December 15, 2011, the administrative law judge ("ALJ") found that plaintiff had severe impairments consisting of obesity status post gastric bypass surgery, obstructive sleep apnea, fibromyalgia, osteoarthritis, lumbar and thoracic degenerative disc disease, carpal tunnel syndrome, major depressive disorder, bipolar I disorder, posttraumatic stress disorder, generalized anxiety disorder, and borderline personality disorder. PAGEID # 1316. After considering the entire record, the ALJ found that plaintiff has the residual functional capacity to perform sedentary work, although plaintiff is unable to climb ladders, ropes or scaffolds. The ALJ further found that plaintiff can occasionally stoop, kneel, crawl, crouch, and climb ramps and stairs, and that she can frequently push, pull,

operate foot pedals, and handle and finger bilaterally. The ALJ also concluded that plaintiff must avoid hazards such as working around dangerous moving machinery and working at unprotected heights, and that she is limited to performing simple, routine, three-to-four-step tasks in an environment without fast-paced production or strict time quotas, and to having superficial interaction with others. PAGEID #1319.

This matter is before the court for consideration of plaintiff's May 8, 2014, objections (Doc. 20) to the May 1, 2014, report and recommendation of the magistrate judge (Doc. 19), recommending that the court affirm the decision of the Commissioner. The Commissioner has filed a response (Doc. 21) to plaintiff's objections. For the reasons stated below, the court overrules plaintiff's objections and adopts the magistrate judge's report and recommendation.

I. Standard of Review

If a party objects within the allotted time to a report and recommendation, the court "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b). Upon review, the court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

The court's review "is limited to determining whether the Commissioner's decision 'is supported by substantial evidence and was made pursuant to proper legal standards.'" *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010) (quoting *Rogers v.*

*Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also*, 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). Put another way, a decision supported by substantial evidence is not subject to reversal, even if the reviewing court might arrive at a different conclusion. *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). "Substantial evidence exists when 'a reasonable mind could accept the evidence as adequate to support a conclusion [and] . . . presupposes that there is a zone of choice within which the decision-makers can go either way, without interference by the courts.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (internal citation omitted). Even if supported by substantial evidence, however, "'a decision of the Commissioner will not be upheld where the [Commissioner] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## II. Objections

### A. ALJ's Discussion of the Opinions of Melissa Lutz

Plaintiff first objects to the magistrate judge's conclusion that the failure of the ALJ to address the opinions of Melissa Lutz in more detail was harmless error. Under 20 C.F.R. §404.1527(d)(2), the ALJ is required to provide "good reasons" for the weight being accorded a treating source, but this requirement only applies to treating sources. *Ealy*, 594 F.3d at 514. Furthermore, only "acceptable medical sources" can provide medical

opinions.  20 C.F.R. §§404.1527(a)(2) 416.927(a)(2).

Ms. Lutz is a licensed clinical social worker from the Muskingum Valley Health Center, and is not an "acceptable medical source."  Rather, her records fall under the category of evidence from "other sources" as defined in 20 C.F.R. §§404.1513(d) and 416.913(d). *See Amer v. Comm'r of Soc. Sec.*, No. 1:13-cv-282, 2014 WL 1338115 at *9 (S.D. Ohio April 2, 2014), *adopted* 2014 WL 1670082 (S.D.Ohio April 24, 2014); SSR 06-3p, 2006 WL 2329939 at *2 (S.S.A.).  Because Ms. Lutz is not an "acceptable medical source," the ALJ was not required to provide good reasons for the weight given to her opinion under §404.1527(d)(2).  *Mulkey v. Comm'r of Soc. Sec.*, No. 1:10-cv-466, 2011 WL 4528485 at *6 (W.D.Mich. June 14, 2011), *adopted* 2011 WL 4528479 (W.D.Mich. Sept. 29, 2011). While the ALJ may use evidence from "other sources,", such information "cannot establish the existence of a medically determinable impairment.  Instead, there must be evidence from an 'acceptable medical source' for this purpose."  SSR 06-3p, 2006 WL 2329939 at *2.  However, information from "other sources" "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function."  *Id.*

Factors which the ALJ can apply to opinion evidence from "other sources" include: how long the source has known and how frequently the source has seen the individual; how consistent the opinion is with other evidence; the degree to which the source presents relevant evidence to support an opinion; how well the source explains the opinion; and whether the source has a specialty or area of expertise related to the individual's impairment. *Id.*, 2006 WL 2329939 at *4.  As to the explanation of the consideration

given to opinions from "other sources", SSR 06-3p states:

> Since there is a requirement to consider all relevant evidence in an individual's case record, the case record should reflect the consideration of opinions from medical sources who are not "acceptable medical sources" and from "non-medical sources" who have seen the claimant in their professional capacity. Although there is a distinction between what an adjudicator must consider and what the adjudicator must explain in the disability determination or decision, the adjudicator generally should explain the weight given to opinions from these "other sources," or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case."

2006 WL 2329939 at *6.

The opinion of Ms. Lutz is contained in a "QUESTIONNAIRE AS TO MENTAL RESIDUAL FUNCTIONAL CAPACITY" completed by Ms. Lutz on August 1, 2011. *See* PAGEID ## 2496-2498. In the questionnaire, Ms. Lutz indicated that plaintiff had marked impairments in four areas: ability to perform and complete work tasks in a normal work day or week at a consistent pace; ability to perform at production levels expected by most employers; ability to behave predictably, reliably, and in an emotionally stable manner; and ability to tolerate customary work pressures. PAGEID ## 2497-2498. This document does not state how long Ms. Lutz had known plaintiff or whether she had seen plaintiff on any occasion other than to complete the questionnaire, nor does it indicate whether Ms. Lutz specializes in any particular area. Ms. Lutz did not present any other evidence in support of her opinion. The only explanation offered for Ms. Lutz's opinion in the questionnaire was in regard to the question whether plaintiff would be likely to deteriorate if she were placed under the stress of a job, to which Ms. Lutz

responded:

> This patient is under considerable stress d/t physical conditions & treatment required. She displays aggressive behaviors when encountered with stress. These behaviors would worsen with address stress of employment while managing her medical needs.

PAGEID #2498.

> The ALJ addressed the evidence from Ms. Lutz as follows:

> Regarding the claimant's mental impairments, the opinion of the licensed clinical social worker from Muskingum Valley Health Center is given no weight since this individual is not an acceptable medical source as defined by the Regulations (Exhibit 39F; 20 CFR 404.1513 and 416.913). "Medical sources" that are not "acceptable medical sources" include nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists. Only acceptable medical sources can give medical opinions (20 CFR 404.1527(a)(2) and 20 CFR 416.927(a)(2)). However, the undersigned considered the information provided in this opinion to help the undersigned understand how the claimant's impairments affect her ability to work (Exhibit 39F).

PAGEID #1325.

As required under SSR 06-3p, the ALJ explained that he was assigning no weight to Ms. Lutz's opinion because only acceptable medical sources can give medical opinions sufficient to establish the existence of a medically determinable impairment, and Ms. Lutz was not an "accepted medical source." *See* SSR 06-3p, 2006 WL 2329939 at *2; PAGEID # 1325. As noted above, SSR 06-3p sets forth several factors which the ALJ should consider in reviewing evidence from "other sources." *See* 2006 WL 2329939 at *4. However, several of those factors, including how long Ms. Lutz had known plaintiff, how often she had treated plaintiff, and whether Ms. Lutz had a specialty or area of expertise related to plaintiff's impairment,

6

were not answered in the questionnaire completed by Ms. Lutz and are not otherwise apparent from the record. As to whether Ms. Lutz's opinion was consistent with other evidence, the ALJ discussed the other medical evidence in the record relating to both physical and mental impairments, and twice stated in his opinion that the objective medical evidence failed to provide a basis for finding limitations greater than those reported in the RFC. *See* PAGEID ## 1321, 1323.

The magistrate judge noted that although the ALJ did not engage in a lengthy discussion of Ms. Lutz's opinion, the ALJ stated that he "did consider Ms. Lutz's opinion 'to help the undersigned understand how the claimant's impairments affect her ability to work (Exhibit 39(F).'" Doc. 19, pp. 16-17. This complies with SSR 06-3p, which states that information from "other sources" "may provide insight into the severity of the impairment(s) and how it affects the individual's ability to function." SSR 06-3p, 2006 WL 2329939 at *2. The magistrate judge also correctly noted, Doc. 19, p. 17, that the ALJ cited to SSR 06-03p earlier in his decision, stating, "The undersigned has also considered opinion evidence in accordance with the requirements of ... [SSR] 06-3p." PAGEID # 1319. This indicates that the ALJ was aware of his responsibility under SSR 06-3p to review evidence from "other sources" such as Ms. Lutz. The magistrate judge also observed, Doc. 19, p. 17, that the ALJ found, consistent with Ms. Lutz's opinion, that plaintiff had moderate limitations in social functioning and problems getting along with others, and restricted her to superficial interaction with others. *See* PAGEID ## 1323, 1326. This offers further indication that the ALJ did in fact

7

review and consider Ms. Lutz's opinion.  As the magistrate judge commented, Doc. 19, p. 17, this is not a case "where it was apparent that the ALJ did not, in fact, consider or evaluate the opinion of a source like a counselor consistently with the dictates of SSR 06-03p" as there is "at least some evidence that the ALJ considered [Ms. Lutz's] opinion in the proper context[.]"

The magistrate judge also noted, Doc. 19, p. 17, that the extreme limitations noted by Ms. Lutz were the same ones noted in the August 5, 2010, assessment completed by Ohio Job and Family Services Examiner Keli Yee, Psy.D.  The magistrate judge reasoned, Doc. 19, p. 17, that had the ALJ specifically addressed the extreme limitations noted in Ms. Lutz's opinion, they would have been rejected for the same reasons the ALJ offered in addressing Dr. Yee's opinion.  *See* PAGEID #1326 (statement of ALJ that "little weight is given to Dr. Yee's opinion concerning functional limitations in the 'marked' range, which included marked limitations in completing a normal workday and workweek without interruptions").  The magistrate judge concluded that any error in the ALJ's failure to provide a more detailed discussion of Ms. Lutz's opinion was harmless.  This court agrees.  *See Endriss v. Astrue*, 506 F.App'x 772, 778 (10th Cir. 2012)(rejecting argument that ALJ's discussion of physical therapists' evaluations was inadequate, noting that the limitations proposed by therapists were also proposed by two doctors whose opinions were afforded little weight by the ALJ).

The court concludes that the record adequately reflects that the ALJ considered Ms. Lutz's opinion as required under SSR 06-3p, and that his decision as a whole is sufficient to allow review by

8

this court of the ALJ's reasoning.  The ALJ's decision not to incorporate Ms. Lutz's marked limitations findings in plaintiff's RFC is supported by substantial evidence.

B. ALJ's Discussion of Dr. Yee's Opinion

Plaintiff also objects to the magistrate judge's finding that the ALJ appropriately addressed the opinion of Dr. Yee.  Plaintiff argues that the ALJ did not adequately explain why he was rejecting Dr. Yee's finding of a marked limitation, particularly in light of the fact that Dr. Yee's opinion was consistent with Ms. Lutz's opinion, and that it was improper for the ALJ to reject Dr. Yee's opinion as being inconsistent with the Global Assessment of Functioning ("GAF") score[1] she assigned to plaintiff.

Generally, an opinion from a medical source who has examined a claimant is given more weight than that from a source who has not performed an examination.  *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013)(citing 20 C.F.R. §§404.1502 and 404.1527(c)(1)).    When an ALJ completely ignores the evidence from non-treating sources that is inconsistent with the ALJ's residual functional capacity assessment, a remand may be required."  *Nolan v. Comm'r of Soc. Sec.*, No. 2:12-CV-477, 2013 WL 4831029 at *4 (S.D.Ohio Sept. 10, 2013).   However, the requirement under §404.1527(d)(2) for the ALJ to provide "good reasons" for the weight being accorded the opinion of a medical source does not

---

[1] Elsewhere in his opinion, the ALJ noted, "The Global Assessment of Functioning (GAF) is but one diagnostic tool that provides a subjective snapshot of the claimant's functioning on the specific date of assessment ... and it must be considered within the entire disability case context including documented daily activities and the objective medical evidence of record." PAGEID #1322.

apply to nontreating sources. *Ealy*, 594 F.3d at 514. Opinions from nontreating examining sources are weighed based on the examining relationship, specialization, consistency, and supportability. *Gayheart*, 710 F.3d at 376. Other factors "which tend to support or contradict the opinion" may be considered in assessing any type of medical opinion. 20 C.F.R. §§404.1527(c)(6). However, "the opinions of State agency medical and psychological consultants and other program physicians and psychologists can be given weight only insofar as they are supported by evidence in the case record[.]" SSR 96-6p, 1996 WL 374180 at *2 (S.S.A.).

The administrative law judge discussed Dr. Yee's August 5, 2010, assessment as follows:

> Dr. Yee noted that the claimant told her that she was not currently on any psychiatric medications, despite having been previously prescribed medications by Dr. Roylance. Dr. Yee noted that the claimant had a normal behavioral presentation, but a withdrawn social presentation. The claimant reported always being depressed with crying spells and suicidal ideation, along with homicidal ideation. She also reported manic-type symptoms and hearing things. Dr. Yee found the claimant to have normal immediate memory, moderate long-term memory, moderate general fund of knowledge, normal ability to abstract, but reduced attention and concentration. Dr. Yee diagnosed the claimant with bipolar I disorder and personality disorder and assessed a GAF of 59, which is indicative of moderate symptoms but within two points from being considered "mild symptoms" which ranges from 61 - 70. (Diagnostic and Statistical Manual of Mental Disorders at 32 (4th ed. 1994)).

PAGEID ## 1322-1323. The ALJ further stated:

> Dr. Yee, the Ohio Job and Family Services examiner in August 2010, opined that the claimant had marked limitations in completing a normal workday and workweek without interruptions. Dr. Yee further stated that the claimant has moderate limitations sustaining concentration, persistence, and pace and socially

10

interacting (Exhibit 32F, 10). Additionally, the claimant's representative included a letter from Dr. Yee from an unrelated claimant in which Dr. Yee stated that moderate mental impairments would lead to an individual likely being off task 25 to 35 percent of the workday (Exhibit 33F). The undersigned gives no weight to this letter because it does not relate to this particular claimant. Moreover, Dr. Yee's actual opinion in this matter, which includes a statement that the claimant is unemployable (a statement reserved to the Commissioner as detailed above and not given any weight), is given little weight as it is not consistent with Dr. Yee's own findings that the claimant has numerous normal mental status areas, along with normal behavioral presentation. Dr. Yee also opined that the claimant had a GAF of 59 on the date of [her] examination. Such a score i[s] indicative of "moderate" symptoms and close to the "mild" range, which begins at a GAF of 61. For these reasons, little weight is given to Dr. Yee's opinion concerning functional limitations in the "marked" range.

PAGEID #1326.

As noted by the magistrate judge, Doc. 19, p. 11, the ALJ's analysis of Dr. Yee's opinion was part of a broader analysis of the medical evidence of plaintiff's mental impairments. In addition to discussing Dr. Yee's assessment, the ALJ addressed a report by Floyd Sours, a psychologist who examined plaintiff on September 17, 2009. At that time, plaintiff was not taking any prescription medication, and had good to fair eye contact and a normal flow of conversation and thought despite having a minimal range of emotion and reported depression. Dr. Sours diagnosed plaintiff with major depression, posttraumatic stress disorder, and generalized anxiety disorder, but found her to have a GAF of 61, which is indicative of mild symptoms and only some difficulty in social and occupational functioning. PAGEID #1322. Dr. Sours opined that plaintiff had no impairment understanding and following instructions, and mild impairment in the areas of relationships, attending to tasks in a

11

work setting, and withstanding the stress and pressures of work activity.  The ALJ gave his opinion "little weight as it is not consistent with the claimant's longitudinal psychiatric history that demonstrates multiple severe mental impairments that limit her to unskilled, low stress work activities with limited social interaction."  PAGEID # 1325.

The ALJ also addressed the April 29, 2010, assessment of David Dietz, Ph.D, a state agency psychological consultant, which found that plaintiff had mild restriction in activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation.  Dr. Dietz concluded that plaintiff is capable of completing three-to-four-step tasks that do not have strict production standards and do not require plaintiff to direct and supervise others.  PAGEID # 1325.  The ALJ gave this opinion some weight as being consistent with the evidence of record, including evidence of plaintiff's daily activities and recent findings that plaintiff had considerable improvement in her mental impairments with medication   PAGEID ## 1325-1326.

The recent findings referred to by the ALJ were contained in the treatment notes of Dr. Erin Roylance, D.O.  The ALJ noted that plaintiff sought treatment from Dr. Roylance from February, 2010, through June 1, 2010.  At that time, Dr. Roylance diagnosed plaintiff with mood disorder, generalized anxiety disorder, posttraumatic stress disorder, and borderline personality traits, with a GAF score of 55, indicating moderate symptoms and functional difficulties.  PAGEID # 1322.  The ALJ observed that plaintiff

again sought psychiatric care with Dr. Roylance on February 28, 2011. On May 2, 2011, plaintiff reported that her medication was helping, and on May 23, 2011, plaintiff stated that her medication was helping her a lot and that she was not as worried or angry. Dr. Roylance's treatment notes indicated that plaintiff's mood was good. The ALJ concluded that "it appears when the claimant is compliant with her medication, her symptoms are reduced and better controlled." PAGEID # 1323. The ALJ limited plaintiff to performing simple, repetitive, three-to-four-step tasks in an environment without fast-paced production or strict time quotas and with superficial interaction with others. The ALJ then noted that this "objective medical evidence does not provide a basis for finding limitations greater than those determined in this decision." PAGEID # 1323.

The administrative law judge correctly noted in his report and recommendation, Doc. 19, p. 12, that the ALJ in this case did not completely ignore Dr. Yee's opinions. The magistrate judge also correctly concluded that because the ALJ discussed other evidence which warranted giving little weight to Dr. Yee's opinion, the ALJ did not err in relying in part on the GAF score of 59, which indicated moderate symptoms, as part of the basis for declining to accept those opinions. Doc. 19, p. 13. As the magistrate judge noted:

> [A]t least some of the reasons given for discounting portions of those opinions–the relatively normal findings recited in Dr. Yee's report itself, and its inconsistency with other medical evidence, including Mr. Sours' consultative examination and report and Dr. Dietz's evaluation–accurately reflect the record. In that context, the use of a GAF score as one factor in deciding not to give significant weight to what amounts to a disabling limitation is not improper.

13

Doc. 19, pp. 12-13.  *See Amer*, 2014 WL 1338115 at *9 (where other evidence also supports giving little weight to a non-treating source's opinion, it was not error for the ALJ to rely in part on the GAF scores in the medical record in evaluating this opinion evidence).

The magistrate judge also addressed plaintiff's argument that the ALJ did not specifically address the eleven moderate limitations which were found by Dr. Lee.  The magistrate judge noted, Doc. 19, p. 13, that at least seven of the moderate limitations noted by Dr. Yee were incorporated into the ALJ's RFC findings, and that the ALJ also referred specifically to the fact that plaintiff had "moderate limitations sustaining concentration, persistence, and pace and socially interacting."  *See* PAGEID # 1326.  This court agrees with the conclusion of the magistrate judge that the failure of the ALJ to provide a point-by-point analysis of Dr. Yee's opinion does not warrant remand in this case.

Plaintiff also argues that the ALJ did not adequately explain why he rejected Dr. Yee's marked limitations findings.  The ALJ noted that Dr. Yee opined that plaintiff had marked limitations in completing a normal workday and workweek without interruptions.  However, the ALJ noted that he was giving Dr. Yee's opinion concerning functional limitations in the marked range little weight because this opinion was inconsistent with Dr. Yee's own findings that plaintiff had numerous normal mental status areas, a normal behavioral presentation, and a GAF of 59.  PAGEID # 1326.  This explanation was adequate to permit review of the ALJ's determination.

Plaintiff also argues that Dr. Yee's opinion concerning

14

plaintiff's marked limitations should not have been rejected by the ALJ because this assessment was consistent with Ms. Lutz's evaluation. As noted above, the ALJ was not required to give any special credence to Ms. Lutz's opinions, as social workers are not "acceptable medical sources." *Amer*, 2014 WL 1338115 at *9. The ALJ was not required to accept any particular opinion simply because it was held by more than one medical source. The ALJ's decision adequately explained why he was rejecting both Dr. Yee's and Ms. Lutz's findings of marked limitations.

This court agrees with the conclusion of the magistrate judge, Doc. 19, p. 13, that the record demonstrates that the ALJ was fully aware of the entirety of Dr. Yee's opinions. An ALJ is not required to discuss every piece of medical opinion evidence. *Karger v. Comm'r of Soc. Sec.*, 414 F.App'x 739, 753 (6th Cir. 2011). The ALJ's discussion of the opinions of Dr. Yee and the other mental health information in the record was sufficient to permit review of the ALJ's evaluation of Dr. Yee's opinions and his determinations are supported by substantial evidence.

C. Opinions of Drs. Dunmyer and Newsome

Plaintiff also argues that the ALJ erred in finding that there was no evidence to support the findings of postural and manipulative limitations posed by Dr. Eric Newsome, M.D., an Ohio Job and Family Services examiner, in a report dated September 24, 2009, and Dr. Shelly Dunmyer, M.D., also an Ohio Job and Family Services examiner, in a report dated August 16, 2010.

In discussing the opinion of Dr. Newsome, the ALJ noted:

> Dr. Newsome further stated that the claimant is markedly
> limited pushing/pulling and moderate[ly] limited bending,
> reaching, handling, seeing, and performing repetitive
> foot movements. These statements are inconsistent with

the medical evidence of record, which demonstrates no
limitation pushing, pulling and reaching with the upper
extremities, or seeing.  The claimant is able to perform
numerous household chores, fish, and work for a four-
month period after the alleged onset date of disability
at a job exceeding the sedentary exertional level.
Therefore, this opinion is given little weight.

PAGEID #1324.

In regard to the opinion of Dr. Dunmyer, the ALJ stated that
Dr. Dunmyer found that plaintiff had "marked limitations
pushing/pulling, bending, reaching, handling, and seeing[.] PAGEID
# 1324.  The ALJ commented that "these statements are wholly
inconsistent with both the medical evidence of record and the
credible portion of the claimant's testimony" and that "this
opinion, like the opinion of Dr. Newsome, is not entirely
consistent with the medical evidence of record and claimant's
activities of daily living and are therefore given little weight."
PAGEID # 1324-1325.[2]

The magistrate judge correctly observed that since since there
is no treating source opinion that plaintiff suffers from disabling
physical limitations, and since Dr. Newsome and Dr. Dunmyer are not
treating sources, the ALJ had considerable discretion in weighing
their opinions.  Doc. 19, p. 14.  The magistrate judge also noted
that in her Statement of Errors, plaintiff pointed to no evidence
in the record supporting the marked limitation findings of Drs.
Dunmyer and Newsome, and that "the ALJ had other valid reasons for

_____

[2] The ALJ stated that plaintiff lives alone, prepares meals,
cleans her house with some help, washes dishes, does laundry,
shops in stores with family members, bathes and grooms herself
independently, plays games and uses a computer, and that on one
occasion, she went fishing long enough to get a first-degree
sunburn.  PAGEID # 1323.

discounting the more extreme findings in Dr. Newsome's and Dr. Dunmyer's reports because there was no other medical evidence supporting such limitations." Doc. 19, pp. 14-15. Plaintiff now argues that the ALJ should have accepted these opinions because they corroborated each other. However, the fact that two nontreating doctors arrive at the same conclusion unsupported by any objective medical evidence in the record does not serve to supply the missing objective medical evidence. The court agrees with the conclusion of the magistrate judge that the ALJ's reasons for giving the marked limitation findings of Drs. Dunmyer and Newsome little weight are supported by substantial evidence, and do not constitute a basis for reversal or remand on this issue.

III. Conclusion

Having reviewed the record *de novo*, the court determines that there is substantial evidence supporting the ALJ's determination that plaintiff is not disabled, as defined in the Social Security Act. Accordingly, the court overrules plaintiff's objections (Doc. 20) and adopts and affirms the magistrate judge's report and recommendation (Doc. 19). The Commissioner's decision is affirmed, and this action is dismissed.

Pursuant to Sentence 4 of 42 U.S.C. § 405(g), the clerk shall enter final judgment affirming the decision of the Commissioner and dismissing this action.

It is so ordered.


Date: May 27, 2014          _____s/James L. Graham_____
                            James L. Graham
                            United States District Judge


17